BREECE-WHITE MANUFACTURING COMPANY *v*. JOURNEY. ·

Opinion delivered February 8, 1926.

MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE OF FELLOW-SERVANT.—Testimony *held* to justify a finding that plaintiff's personal injuries were caused by the negligence of a fellow-servant in permitting a piece of tin to choke a valve in a steam pipe which caused the carriage on which plaintiff was standing to run wild and throw him off.

Appeal from Desha Circuit Court; *T. G. Parham*, Judge; affirmed.

*T. D. Wynne*, for appellant.

*Sam M. Levine* and *L. DeWoody Lyle*, for appellee.

McCULLOCH, C. J.  Appellant is engaged in operating a sawmill at Arkansas City, in this State, and appellee was employed to work at the mill in handling logs on the saw carriage.  His position was that of "front end dogger," and his duty was to stand on the front end of the saw carriage and turn the logs under the direction of the sawyer, and fasten them to the standards of the carriage by use of hooks.  The carriage was controlled entirely by the sawyer, with the use of a lever, and was propelled by steam, and was moved back and forth under the control of the sawyer.  At the back end of the carriage run, or track, there was a bumper to prevent the carriage running off.  There was a steam feed-pipe,

nine inches in diameter, running out from the boiler into the mill, and the steam was distributed through smaller pipes. There were two carriages, and one of the smaller pipes, about five inches in diameter, ran to each of these carriages and fed the steam which operated them. When the sawyer pulled the lever to run the carriage back, it opened the valve so that the steam came through and furnished the power to move the carriage.

Appellee was on the carriage when the sawyer moved it back, and it ran with such velocity that it struck the bumper and threw appellee off, and he was seriously injured.

The steam pipes were underneath the mill floor, and immediately after the occurrence of this incident the employees in charge of the operations there went under the mill floor and unscrewed the cap and took out the valve and found that there was a small piece of tin crumpled up or battered almost into a mass, which was inside of the steam pipe, and had been thrust into the port of the valve, so that, when the valve was opened to let the steam through, this piece of metal prevented the closing of the valve, and the excess of steam pressure caused the carriage to run wild.

It seemed to be undisputed that the carriage got beyond the control of the sawyer, and that this was caused by the valve being held open by this piece of crumpled tin, which should not have been on the inside of the steam pipe.

Appellee recovered damages below, and the only ground urged here for reversal is that the evidence is not sufficient to sustain the verdict, in that it does not show that appellant or its servants put the piece of tin inside of the pipe or negligently permitted it to be put therein or to remain therein after an opportunity to discover its presence.

It is undisputed, as we have already seen, that the piece of tin was inside the pipe, and that it served no purpose there, and should not have been there. The

pipes were closed, and the piece of tin could not have gotten there otherwise than by being put there by somebody in charge. In other words, it was not a situation which might have been brought about by an intruder, and counsel for appellant have not suggested any theory upon which the presence of the piece of tin can be accounted for, other than it was put there by some one in charge of the operation of the mill. In addition to that, there is affirmative testimony that McCain, the engineer who was in charge of the engine and steam pipes, put the piece of tin into the pipe in the process of repairing the valve. A witness named Bland testified that, five or six days before appellee's injury occurred, he saw McCain working on this particular valve where they found the piece of tin, that McCain was repairing the valve, and that he cut a small, round piece of tin, about the size of this one that was found crumpled up in the valve. McCain testified as a witness, and denied that he put the tin in the valve, and stated that he did not work on this particular valve, but worked on a flange union about twenty feet away from this valve, and that he put in a gasket made of boiler steel, but did not use any tin. He testified that he cut the gasket out of material that he kept in the tool-room. He stated that this was about a month before appellee's injury occurred.

The question of the weight of the testimony was one for the jury, and we are of the opinion that there was evidence legally sufficient to sustain the verdict.

Affirmed.